Now in this case number 2-16-201C5, we require Firefighters Union v. 3706, position of account, using Illinois Labor Relations Board at all. Argument on behalf of the position of account, attorney is Susan Mazza. Argument on behalf of the defendants at least, attorney is Valerie Quinn. Also argument on behalf of the defendants at least, attorney is Tracey E. Garrett. Okay, so tell me how we're splitting the time. I plan to take about 6 or so minutes, your honor, to get the balance of the time. And your name is? I am Valerie Quinn, attorney at the Illinois Labor Relations Board. Okay, about 5 or 6 minutes? No, no, no. And then, um, Mr. Garrett, about 4 or 5, 4 minutes or so? Whatever's left? Yes, ma'am. Okay. Okay, Ms. Madda, you can proceed. Thank you. Good morning, your honor. It's an honor to please the court. I'm Susan Madda, and I'm here on behalf of the Wheaton Firefighters Union, Local 3706.  The first issue is the board's decision that the city's health insurance proposal was a permissive waiver of the union's statutory right to engage in midterm bargaining. And I'm going to address that decision a little later because there's a question as to whether or not that issue is properly before this court. The second decision was that the city did not engage in bad faith bargaining by insisting to impasse on that proposal by submitting it to the interest arbitrator. Firefighters, who are also known as Section 14 employees, have no right to strike. Section 2 of the Act, which was found on A203 of the union's supplemental appendix, sets forth the exceptionally strong public policy favoring interest arbitration as an expeditious, equitable, and effective alternative to the right to strike. So when Section 14 employees are unable to resolve their negotiation disputes, they utilize the Section 14 impasse procedures. And if you bear with me for a moment, I'd like to read an excerpt of Section 14, which can be found on A238 of the union's supplemental appendix. Where there is no agreement between the parties, or where there is an agreement, but the parties have begun negotiations or discussions looking to a new agreement or amendment of the existing agreement, and wage rates or other conditions of employment under the proposed new or amended agreement are in dispute, the arbitration panel shall base its findings, opinions, and order upon the following factors as applicable. And then when you go down to subsection 8, it provides that such other factors not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours, and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration, or otherwise between the parties. So it's that provision that limits the interest arbitrator's consideration to mandatory subjects of bargaining. There is no duty to bargain over permissive topics under the Act. And under Section 14J of the Act, which is found in A239 to 240 of the union's supplemental appendix, the impasse procedures are initiated when a party invokes mediation. So the process is the parties are unable to resolve their disputes in negotiation. Mediation is invoked. And if mediation is unsuccessful, then parties proceed to compulsory interest arbitration. And it's through that process that parties will actually submit final offers to the interest arbitrator. The arbitrator will then impose contractual terms on the parties through issuance of a final and binding award. And there is a long line of appellate court and board precedent that stand for the proposition that a waiver of a statutory right is a permissive subject of bargaining and that insistence to impasse thereon constitutes bad faith bargaining in violation of the Act. The first decision is an appellate court decision which was issued in 1991 in Board of Trustees. And the fourth district unequivocally held that a waiver of a statutory right is a permissive subject of bargaining and that the employer violated the duty to bargain in good faith by insisting to impasse on a permissive waiver of a statutory right. And the rationale employed by the appellate court was that when you insist on a waiver of a statutory right, you're holding mandatory subjects hostage to that waiver. And since there's no duty to bargain over permissive subjects, it's bad faith bargaining. What do you think about the city of Kankakee case where they found that health insurance benefits were mandatory, correct? Yes, there's no dispute that health insurance benefits. It's a mandatory subject of bargaining. The issue here is that the city's proposal waived the union's right to engage in midterm bargaining over that mandatory subject. That's where the permissive aspect comes in, and that was specifically addressed. That issue was addressed in Mount Vernon, which was issued by the appellate court a few years later, and I believe it was 1995 also by the fourth district, that there is a statutory right to engage in midterm bargaining. We're going to ask if your Roman numeral two, the board, erred in finding that the city did not violate the act when it insisted to impasse on a permissive subject of bargaining. The subject appears to be health insurance. No, the subject is the waiver of the union's statutory rights. Yes, but the waiver relates to what? It relates to, doesn't relate to hours, doesn't relate to wages, but it relates to health insurance. Now, if they're attempting to affect a statutory right regarding a mandatory subject, you have decided to call it permissive. Is that correct? Well, not just the union. The appellate court has held that, and the board, there's actually a very long line of board cases that hold that as well because there is this statutory right to engage in matters that are not addressed in the collective bargaining agreement or that are not fully addressed in the collective bargaining agreement. Well, what you seem to be saying is that there is authority to suggest that a perversion or subversion via a mechanism of negotiation of a mandatory right is permissive. Yes, yes. Doesn't that sound somewhat contradictory? No, it's in line with the purpose and the intent of the act, and it's in line with appellate court and board precedent because in this case, if the city's proposal were granted, the city would be able to make any changes it wanted to a mandatory subject, health insurance. So permissive relates not to the opposite of mandatory. It relates to what is now a newly acquired privilege or right or characteristic that the city now has in derogation of the union's right to negotiate during the term of the contract. Yes. The city was trying to force a waiver of the union's statutory right to engage in midterm bargaining by insisting to impasse on a proposal that waived the union's right to engage in midterm bargaining. Okay. That is the most convoluted argument I've heard in at least 10 or 15 years, and I've been on the bench close to 30. Talk to me about the Bensonville case. Okay. Bensonville is an anomaly. Bensonville is not in line with any appellate court precedent or labor board precedent, and Bensonville is also distinguishable from the instant case. In that case, both parties insisted to impasse on permissive proposals. So neither party had clean hands in that situation. The union filed as well as the system? Yes. Yes. But here, and that's one of the ways Bensonville is distinguishable here, the union did not insist to impasse on any permissive proposal or present a permissive proposal. Only the city did that. And Bensonville employed two separate rationale. The first is that because parties can agree to devise alternate impasse procedures, that insisting to impasse on a permissive subject does not violate the duty to bargain in good faith. But that decision, which Wheaton entirely relies upon, ignores the fact that agreement to alternate impasse procedures is a prerequisite. Here, there was no such agreement. In fact, the union consistently and vehemently objected to the city's insistence to impasse on a permissive proposal. If the city is looking for mediation, it's different than if the union is filing for mediation. I mean, one person homing the other hostage is different monetarily, correct? Well, I mean, either party can invoke mediation once they reach impasse. Correct. But, I mean, is the impact of the village filing for mediation versus the union filing for mediation, is that financial impact different on one or the other? No, it's the same. It's the same. It's more just that the burden of proof rests on whoever invokes mediation. Is it correct to believe that the city, in its suggestions, said that it would treat the firefighters no differently than they would treat the non-union members of the city employees? Well, I don't know. It's hard to predict what the city would do in the future. They would have to treat them the same under their proposal. They said they would do it. That's all I'm asking. They would have to treat them the same under their proposal, but the problem under their proposal is that with non-union employees, the city can implement whatever changes it wants, and those employees have no right to bargain over the changes. The union, because of the Illinois Public Labor Relations Act, has the right to bargain over health insurance because it's a mandatory subject of bargaining. Well, my question was going to be what's the point of referencing non-union employees in this situation? Was it supposed to attempt to apply an equal standard or application of costs expensive of coverage? Was it supposed to be egalitarian? What is the reason for including the non-union employees as far as you see? It's not just as far as I see because I was involved in the interest arbitration procedure. The firefighters have better health insurance than the non-city employees. Presently? Yes. And they wanted to, as far as I understand presently, they may have brought them more in line since. I'm not 100 percent sure. But at the time of the interest arbitration, they had better terms and conditions of health insurance, and the city wanted to cut costs and bring the union's better terms in line with the non-union employees' lesser terms. And that was why we vehemently fought against it. Health insurance is not only essential to any employee, but especially to firefighters. You know, we're talking about the case law here and the differences, you know, mandatory, permissive. Talk to me about the zipper clause in this case. And do we need everything that we've just discussed if we find this zipper clause? Are you talking about the entire agreement zipper clause or the portion? Yes. Okay. And that's the other factor that comes into play is the reason why the union doesn't have, wouldn't have under the city's proposal the right to engage in midterm bargaining over changes to health insurance is because of the zipper clause. The zipper clause precludes negotiation over any issues that are addressed in the collective bargaining agreement. And that's really the central problem here is that any change the city would make to health insurance during the term of the agreement, the union would have no right to bargain over because the issue of health insurance is addressed in the collective bargaining agreement. And the board correctly agreed with the union that that is an impermissible waiver of the union's right to engage in midterm bargaining over a permissive or over a mandatory subject of bargaining, thereby rendering the proposal permissive. If I can. What is the rationale that the board gave for claiming that this wasn't a bad faith by law? So, and that goes back to Bensonville. So the first rationale that was employed is that because parties can devise an alternate procedure for impasse procedure, that it's not bad faith bargaining. The second rationale was that section 1230.90K of the board's rules and regulations allow a party to prohibit an arbitrator from considering a permissive topic. That process doesn't work as we see in the Skokie and Barrington cases, which can be found at A68 and 202 of the union supplemental appendix. In those cases, the employers insisted to impasse on a waiver of a statutory right and submitted those proposals to the interest arbitrator, who happened to be the same arbitrator in both cases. That arbitrator ignored the limitations on his statutory authority, and he actually imposed a forced waiver of the union's statutory rights through a final and binding award. But section 1230.90K, it's important to note, only addresses the conduct of the arbitrator. It does nothing to address the conduct of the parties. That's where the section 10 unfair labor practice procedures come into play. Here, the parties have a continuing relationship. They deal with one another on a daily basis. The ability to secure a determination that a party has engaged in bad faith bargaining is a very powerful tool. It deters the party from engaging in the same conduct in the future. Wheaton and Bensonville effectively take that tool out of the union's arsenal. And the fact is, non-section 14 employees have the right, even under Wheaton, to still file an unfair labor practice charge and seek a determination that an employer engages in bad faith bargaining when it insists to impasse on a waiver of a statutory right. Wheaton effectively takes that right away from section 14 employees. There is nothing in the act or in the board's rules or regulations that serves to differentiate section 14 and non-section 14 employees when it comes to the ability to secure such a determination. And in fact, when the board issued its decisions in Village of Wheeling and Village of Midlothian, those cases are really directly on point with the situation here. Both cases involved firefighters. In both cases, the employers insisted to impasse on a waiver of a statutory right. And in both cases, the unions had invoked interest arbitration. And the board unequivocally held that waiver of a statutory right is a permissive subject of bargaining and that insistence to impasse thereon constitutes bad faith bargaining. And in both cases, the board cited to board of trustees and it cited to this long line of board precedent standing for that proposition. And that long line of board precedent involves non-section 14 employees. So the board clearly recognized that this standard applies regardless of whether you're talking about section 14 or non-section 14 employees. You know, aren't we supposed to, the case law tells us that we're supposed to give the board great deference because they have expertise, they have knowledge in this area, and we don't. How is it that, and it's basically a de novo standard of review. Yes. How is it that we set forth that the board was incorrect in their ruling in this case? Because the board's decision cannot be reconciled with appellate court precedent. The board is bound by appellate court precedent. When the board found that the city's proposal constituted a waiver of the union's statutory right to engage in midterm bargaining, the board was obligated to issue a decision that comported with board of trustees, and the board didn't do that. There's also a board precedent that stands for the proposition, and this is in Department of Illinois Central Management Services that was issued in 2005. The duty to bargain in good faith doesn't end at impasse. It continues through interest arbitration and the issuance of the award. There is an exceptionally strong public policy favoring interest arbitration in Illinois. Are you saying that Bensonville is distinguishable or that Bensonville is wrong? Both. I've got to hedge my bets. But really, both. I mean, it's wrong. It relies on not one single case that stands as precedent. It relies on a non-precedential administrative law judge case. It doesn't cite Bensonville. It doesn't cite any board case that addresses the issue. But the board effectively is allowing parties to engage in bad faith negotiations through this Wheaton decision. Labor stability is founded upon good faith negotiations. If a party is allowed to engage in bad faith through impasse, it will completely disrupt and delay the negotiation process, and it will destroy labor stability. And we see that in the Skokie case. In Skokie, interest arbitration was the beginning of litigation, not the end. And the purpose of the act is that arbitration is to be the end of litigation, not the beginning. And that's why we're asking that you overturn the Wheaton decision. Thank you.  Ms. Quinn. Yes, Your Honor. May it please the Court. The union frames this issue as one where the health care proposal was insisted to impasse by the city. But the board determined that this case involves merely the submission of a permissive topic of bargaining by the city during interest arbitration proceedings. And the reason for that is that there is nothing in this record to indicate that there had ever been bargaining over that health care proposal by the parties prior to interest arbitration. Nothing in the record even suggests that the issue was raised during negotiations. The parties got to impasse over different topics. Interest arbitration was invoked. And during the interest arbitration proceedings, the arbitrator ordered the parties to submit preliminary final offers and then final, final offers. Can I ask a question or two, please? Of course, Your Honor. So the record is devoid of any negotiations relative to health care benefits. That's correct, Your Honor. Does that have any effect on whether or not the health benefits are deemed to be mandatory or permissive subjects? Health care, the board agrees with the union that health care is a mandatory subject of bargaining. But what was proposed here was that the union give up its statutory right to midterm bargaining over that topic. And that is considered, the board considers that to be a permissive topic of bargaining. Well, it seems to me like, correct me if I'm wrong, or at least explain the nonsense in my statement. The fact that somebody hasn't negotiated something before doesn't necessarily mean that it affects a subsequent new negotiation adversely one way or the other. The fact that there hasn't been negotiations on a topic doesn't change the topic. The topic is either mandatory or it's permissive or whatever. And the fact that it wasn't negotiated before, I don't see how that has any effect on the nature of the beast. If a lion is a particular type of species, the fact that it is in the wild or in a zoo doesn't change anything. It's still a lion. So whether or not there's been negotiations before or there haven't been negotiations before, this still is a mandatory subject. So what is the point that you're trying to make? The point I'm trying to make is that on the facts of this case, the topic was submitted to the arbitrator. Because the arbitrator basically said, okay, last call. Give me your final offers. Give me your wish list, as you will. Whatever you'd like to see in the platonic ideal of a contract. And at that point, the city submitted its health care proposal. That was the first time that it had been submitted. Negotiations were not going on during that hearing. Are you saying that there was never an impasse because they never negotiated? They never negotiated it. So therefore, it wasn't an impasse. And therefore, it can't be a bad faith act or an act of bad faith because in order to get to an impasse, there has to be an offer and a denial. That is precisely the point, Your Honor. And that is why this case is exactly on point with Bensonville and why it is not on point with Wheeling and Midlothian. So if an issue is mandatory, if you don't try to negotiate it and if there is no impasse, then you can go to mandatory arbitration without ever being found in bad faith? That's what you're saying? If the topic is mandatory. Okay. But what I'm saying is this case, where it was submitted during interest arbitration proceedings, that is exactly like Bensonville. In Wheeling and Midlothian, the parties had negotiated the permissive topics over a period of months. And they had reached impasse. And they invoked interest arbitration. So in Wheeling and Midlothian, it was correct to say that one side had insisted to impasse on a permissive topic. And it is settled law that that isn't unfair labor practice. However, in Bensonville, as in this appeal, the parties bargained over unrelated topics. Interest arbitration was invoked. In Bensonville, it happened that each side submitted during interest arbitration topics that were found to be permissive. On the union side, it was completely permissive. On the village of Bensonville side, it was part mandatory, part permissive, as the court will see in the case law. Those permissive topics had not been bargained to impasse. They were submitted to the arbitrator post-impasse, if you will. And the arbitrator in Bensonville, like the arbitrator here, followed the law by declining to consider those topics. I think I understand the gist of your argument, but what I don't. I would like to get to the next plateau. Similar to the $64,000 question, you've answered the $16,000 up to $32,000. Assuming for the moment that there was not a violation due to the unusual facts in this case, what about the nature of the request that the city of Wheaton made that wasn't or that was a demand for a waiver of a statutory right that wouldn't result in a bad faith finding? In other words, let's assume that this person got into the house legally and therefore it's not home invasion, so to speak. But once they're in the house, they battered somebody. Okay, they've given a battery. Well, maybe the city of Wheaton did not violate Bensonville because of the lack of first negotiation or prior negotiation. But once they made the request that requested a waiver of a statutory right, would that not be essentially an act of bad faith? No, because the act contemplates that the parties are going to communicate freely and free communication is conducive to free and open negotiation. So in this case, as in Bensonville, the act and the statutory framework functioned the way they were supposed to. The city raised the topic. The union was not prejudiced beyond having to say, no, that's off the table. And the arbitrator followed the law. In both cases, the arbitrator followed the law. The law contemplates that this sort of situation will arise and the parties have remedies. So you're saying that had the union just said, no, it's off the table, then there never would have been jeopardy attaching, in the sense of there would never be a situation where, when and if the union said, we don't like this new rate increase or this decrease in benefits, let's negotiate. Then only if the city said, no, we've already agreed to it, would it be deemed to be bad faith. Because supposedly what you've said is it's been taken off the table. If it's taken off the table, then there's been no adjudication on the merits. If there's been no adjudication on the merits, then there is no, quote, unquote, zipper clause. If there's no zipper clause, there's no violation of the statutory right. Because according to what you've said, they can raise this issue at any time on the basis that they have a statutory right to negotiate these terms during the term of the contract. Your Honor, I think what I'm saying is that the statutory framework worked because the arbitrator declined to consider it. The union, until after the board had resolved the unfair labor practice. How much time had passed during that period? I'm not sure. Mr. Garrett, you might be able to speak to that. I can't. How much time was there, Greg? I think there was Dr. Dr. Separation. Disopposing. What did the bell ring yet? I'm sorry. Okay. So in any event. I would like to hear any answers because to me this is a Gordian knot. It would help. I'm not sure I understand precisely what the court is asking me. So if. If supposedly it's taken off the table, then it's never been adjudicated. It's never been adjudicated. Then. There has been no resolution of the issue of health insurance benefits. And even when the city ever attempted to alter the benefits that previously existed. Then there would be no impediment to the union. Filing or demanding negotiation on these new terms. During the period of the contract. Is that correct? Because if it is correct, then I maybe can buy your argument that there is no harm or foul. But if they are in any way impeded from doing so. The union. Then there is harm and maybe there is a foul. Yeah, but the union. Nobody was impeded. In fact, the parties went on in this case. To resolve the differences. And there is now a functioning collective bargaining agreement. So no, the union was not prejudiced beyond having to say. No, that's not. We're not going to discuss that. Despite the fact that what was proposed was a zipper clause. The union said no. And that was the end of it. The union said no. So it was taken off the table. So that was the end of it. That was the end of it. So it's a little bit like someone claiming prejudice when their objection was sustained. Kind of. Unless there are further questions for all of the reasons. When I say objection is sustained. I'm referring to a trial where a party raises an objection and it's sustained. And then on appeal they claim the objection they raised should not have been sustained. We would urge that the Board approve the decision. Thank you, counsel. Mr. Gerhart. Is it Gerhart or Gert? Gerhart. Is it Dutch? German, actually. German. May it please the Court. Benjamin Gerhart. I represent the city in this matter. Your Honor, it's unlike the famous Lombardo Street in San Francisco, California, which takes countless, countless twists and turns. Issues in this case involve a walk down a straight and narrow path. That path began in 1998 when the Labor Board held that submitting a permissive subject of bargaining in interest arbitration is not a violation of the duty to bargain in good faith. That path continued, unbroken, without wavering, until the Board affirmed that decision in this case. The union has tried valiantly to lead the Court astray from the straight and narrow path. They have tried to set up detours and roadblocks by referring to cases that have nothing to do with the Bensonville holding. The straight and narrow path from Bensonville until this case requires dismissal of the unfair labor practice charge and requires this honorable Court to uphold the Board's decision in that regard. I agree in joining Ms. Quinn on behalf of the Labor Board with respect to her arguments that this case should be dismissed based on the Bensonville holding. Pardon me, when you say dismiss, what do you mean? Affirm. I'm sorry. This Court should affirm the Labor Board's decision to dismiss the unfair labor practice charge. Yeah. I do want to clarify something that Ms. Quinn had said. She had said that there was no bargaining over that subject. That's not an entirely accurate statement, and it's because of the Labor Board's involvement in this case where the Labor Board was dealing with the record in front of it. What is accurate to say is that the stipulated record that was put in front of the Labor Board did not include any of the party's prior bargaining history. That bargaining history would be required to do an impasse analysis, and we discuss an impasse analysis on pages 19 to 21 of our brief. I don't want to belabor the point, but simply impasse is an art form. Just because you're in interest arbitration doesn't mean you're at impasse. Parties can and do continue to bargain while they're in interest arbitration. So simply saying you're in interest arbitration and there's an impasse is erroneous. So are you saying there was or was not an impasse as to the negotiation of the health benefits? I'm saying that the record in front of the Board did not contain the facts that would allow the Board or this Court to conclude that there was an impasse. I want to talk first about this issue. Well, is this another term of art that doesn't necessarily mean in layman's terms the same thing? Because if supposedly the parties agree that there's an impasse and they want to get to arbitration, as you said, and if they apparently just negotiate afterwards, then it's an oxymoron or a paradox or both, that, in fact, regardless of whether you called it an impasse, you're still negotiating. That's correct, Your Honor. Even Ms. Mattis said that the fact that you invoked interest arbitration doesn't relieve the parties of the duty to continue to bargain in good faith. If we're bargaining in good faith, that's not an impasse. There's movement. There's dialogue. There's additional events transpiring. So this record does not allow the Court to conclude that there was an impasse. Now, I would like to talk about the issue as to whether the city's health insurance proposal is a mandatory or permissive subject to bargaining. Justice Shostak, you properly pointed out that in the Kankakee case, it was squarely held that health insurance is a mandatory subject to bargaining. That's not in dispute. Justice McLaren, you clearly asked about, well, why isn't a waiver of that then also mandatory? That answer is addressed in the Mount Vernon case, which the Board's decision relied upon. The Board, to hold that this was permissive, looked at Mount Vernon. Well, Mount Vernon specifically said, and I quote, Waiver of bargaining clauses are mandatory where the subjects are mandatory. Health insurance is mandatory. Therefore, a waiver of bargaining over health insurance is also mandatory under that precedential Mount Vernon decision. In other words, I want to draw a comparison. So are you saying that the Board was right for the wrong reason? I'm saying the Board was right for a right reason. There is a second, subsequent reason that the Board missed that would also submit dismissal of the charge. And that reason is that the city's health insurance proposal was mandatory under the Mount Vernon precedent. And therefore, the charge should also be dismissed for that reason. Which means that they were wrong when they called it permissive. Correct. And to that end, logically speaking, the city has no obligation. I don't point out two extremes. The city has no obligation whatsoever under the law to provide health insurance benefits. Even under the Affordable Care Act, the city could opt out and simply pay a penalty. If the union wants health insurance benefits, they have to bargain for them. So on one extreme, the city can say, we are not providing health insurance. On the other extreme, the union can say, we are locking in your health insurance benefits. You cannot change them during the life of the contract. The union would insist that that is a mandatory subject of bargaining, even though it waives the city's rights to request changes during the term of the contract. Isn't that what it said in the zipper clause? Yes, the zipper clause foreclosed bargaining over any subjects that were covered by the collective bargaining agreement. Now, if both of those extremes are mandatory subjects, the city to say no insurance at all, the union to say this plan and nothing else, then why isn't the city's proposal, which is something in between those two extremes, also a mandatory subject? The city simply said, we will give you health insurance. It will be the exact same health insurance as all of the city's 900 employees. Now, the union, on the rebuttal, might argue, well, the city could gut its insurance. True. If the city wants to spite all of its 900 employees, which would be a pretty bad idea, but if it wants to spite all of its... If they wanted to spite everybody, then they would lower everybody's insurance. Correct. Now, if that unlikely event were to happen, the union... Matt, thank you very much. The union has effects bargaining rights. So, if the city were to gut the insurance plan under its proposal, the union could always demand effects bargaining. And the law is clear that just because we have the right to make a decision does not mean that the union does not have the right to engage in effects bargaining. They have that right. So, if the cost of medical care goes up because of changes to the insurance plan, the union can ask to bargain over the effects of that decision. If I may, Your Honor, can I also address the Benson Bill precedent briefly? I know the time is expiring. Go ahead. Your Honor, the union has tried to distinguish Benson Bill on the grounds that Benson Bill dealt with non-statutory rights. That argument is erroneous. The union points to only half of the issues that were put forward in Benson Bill, the non-solicitation clause. The non-solicitation clause was not a statutory right. That is just a mandatory subject of bargaining. But the other half of the case dealt with the union's proposal to limit the duties that would be performed by patrol officers. In looking at that issue, the board held that the duties performed by the patrol officers were an inherent managerial right. And the union's proposal to infringe on the employer's inherent managerial rights to assign work was a permissive subject of bargaining. Well, where are those inherent managerial rights found? They're found in the statute. They're found in Section 4 of the Illinois Public Labor Relations Act. That involved a waiver of the employer's statutory rights. So, in Benson Bill, the board had the opportunity to draw the distinction that the union asks you to draw today between statutory and non-statutory. The board said no. The submission of any permissive subject in interest arbitration, statutory or non-statutory, does not violate the duty to bargain in good faith. And the board's reasoning was sound. They said, look, interest arbitration is a dispute resolution mechanism. The parties can voluntarily submit whatever they want in interest arbitration. Now, if one party or the other objects that a proposal is permissive, the arbitrator cannot consider it. And that's what happened in Benson Bill, and it's what happened exactly here today. The union urges that the result of Benson Bill and the result of this case would lead to absurd results. I ask of you, learners, how absurd can those results be when Benson Bill has been a law of the land since 1998? What has been the great harm to collective bargaining in the past 17 years? The legislature has amended the Labor Relations Act a dozen times since 1998. Not once have they tried to overrule the Benson Bill precedent. How absurd can those results be when the parties, in this case, voluntarily settled not just one but two collective bargaining agreements, both of which excluded the language of the union disputes? And how absurd can those results be when the Benson Bill decision functioned exactly like it was intended to do? Arbitrator Fletcher did not rule on the permissive subject. Your honors, thank you for your time today. The city asks that the city uphold the city's proposal as a mandatory subject of bargaining and dismiss the case on those grounds and alternatively on the grounds of the Benson Bill precedent. Thank you. Thank you, Mr. Garrett. Ms. Amara. Thank you. I just want to briefly address the issue of whether or not there was bargaining over this issue. There was bargaining over the city's proposal. The fact is it doesn't matter. Subsequent? No, prior to. As in subsequent to the impasse. For a new collective bargaining agreement but not for the collective bargaining agreement that's at issue. But it doesn't matter whether or not there was bargaining because the union is not obligated to bargain over a permissive waiver of a statutory right. All the union has to do is say we will not accept this, which is what the union did. By the same token, the employer should not be allowed to present such a proposal at interest arbitration because the long line of appellate court and board precedent hold that that constitutes bad faith bargaining. Now, counsel addressed the fact that Benson Bill is the law of the land. Clearly, that's not the case because Board of Trustees goes against Benson Bill's holding, which cites no precedent whatsoever. Wheeling and Midlothian also do not cite Benson Bill and comport with binding appellate court precedent as well as other board precedent. The reason why this hasn't been challenged until now is until recently the parties have been following, and all parties have been following, Board of Trustees and Wheeling and Midlothian and have not been submitting permissive topics or permissive proposals at interest arbitration until recently, until this case, until Skokie, until Barrington. That's why it hasn't been challenged until now. And, you know, the city's argument that there's a question as to whether the parties were at impasse, for Section 14 employees, there's a starkly different standard, and that is founded upon the exceptionally strong public policy in Section 2 of the Act that interest arbitration is to be an equitable and effective alternative to the right to strike because these employees have no right to strike. Therefore, the analysis of whether parties are at impasse is completely different. Parties are at impasse once mediation is invoked, period. There doesn't need to be the same analysis for non-Section 14 employees because they have a different statutory scheme for how they reach impasse. This site, City of Chicago, that's non-Section 14 employees. The reason why there's no analysis on when Section 14 employees reach impasse is because it is in the statute itself. As soon under 14J, as soon as mediation is invoked, that is when impasse is reached. Even for non-Section 14 employees, once you reach impasse, there's nothing that prevents the parties from resolving their differences. So regardless of whether you're Section 14 or non-Section 14, if the parties desire, they can continue to resolve their differences. But here we're talking about a waiver of a statutory right, a right the union was never willing to relinquish and to this day has not relinquished. There is no question the parties were at impasse because Section 14 procedures were invoked and the union consistently and vehemently objected to a forced waiver of its statutory right. And to counsel's point that the union could have engaged in effects bargaining, effects bargaining is found, the right to effects bargaining is found in Section 4 of the Act, and that's with respect to managerial rights. When there are managerial rights that affect wages, hours, terms, and conditions of employment, the union has the right to engage in the impact of that decision. That's not what we're talking about here. That would be more like Bensonville. The city's proposal, if granted, would have been a contractual right, not a managerial right. There is no right to engage in effects bargaining. The union, by virtue of the Zipper Clause, would have been precluded from bargaining over any changes that were made, and that puts the union in a powerless position because health insurance is a very essential and fundamental term and condition of employment for employees. Wasn't this taken off the table by objection by the union? It was reserved pending the outcome of this case. In this case, the arbitrator actually followed the Act and followed Section 1230.90K of the Board's Rules and Regulations. It wasn't taken off the table. It was set in the upper right-hand corner. Yes. It was set aside. It was set aside to be decided later pending the outcome of this case. But as I mentioned before, as we see in the Skokie case, there was a lot of litigation that stemmed from the fact that the arbitrator ignored the limitations on his statutory authority and did not take the issue off the table, but instead imposed a forced waiver of a statutory right on the union. And that's why this case is flawed. But again, that procedure regulates the conduct of the arbitrator, not the conduct of the parties, and that's why the access to unfair labor practice procedures to deter employers from engaging in this same conduct in the future is essential if the right to interest arbitration is going to be the equivalent to the right to strike. Your prayer for relief says, For all the foregoing reasons, the union requested that the Court enter an order reversing and vacating the order, which found that the City did not violate Section 10, Sub. A. 4 and 1 of the Act when it insisted to impasse on a permissive subject of bargaining. There is nothing in your prayer that refers to the arbitrator's placement of this issue on the table and reserving it. And so in the process of our disposition, what is going to happen as a practical or legal matter or both relative to that which has not been adjudicated by the arbitrator? What will happen is that a decision would then, the decision that would stand would be that the City engaged in bad faith bargaining. The parties have, if they want to, they can go back to the arbitrator with this decision. But at this point, it's not necessary. The parties did at some point much later in the future resolve that issue. And they're on to soon negotiations for an even new successor collective bargaining agreement. But it's not new because we want to set the precedent for future. Exactly. Exactly. Because this affects all Section 14 employees. And this is a very important decision because it will wreak havoc on labor stability and on the negotiations process. If a party is allowed to engage in bad faith bargaining and insist to impasse on permissive topics or a permissive waiver of a statutory right at interest arbitration. Thank you for your time. Thank you. Thank you, counselors. Thank you for your time. The court will take this case under consideration and render a decision in due course. We'll be in a brief recess. Safe travels.